IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JANE DOE,[1] | | No. CIV S-08-2091-CMK-P |
| | Plaintiff, | |
| | vs. | ORDER |
| CHASTAN, et al., | | |
| | Defendants. | |
| _____/ | | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover,

---

[1] Plaintiff states that she is a male-to-female transsexual and asks the court to refer to her as "Jane Doe" in order ". . . to protect her from inmates that may target her as a prisoner that has been infected with AIDS from a prisoner rape."

1

1  the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

2  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

3  This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

4  84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

5  if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

6  which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

7  allege with at least some degree of particularity overt acts by specific defendants which support

8  the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

9  impossible for the court to conduct the screening required by law when the allegations are vague

10 and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: Chastan, Martin, Harper, Bridges, Martinez, Florez, Cate, Hudson, and Yates.  Plaintiff outlines the following "Brief History" in his complaint:

> Plaintiff is a male to female transsexual, which was previously housed at Pleasant Valley State Prison (PVSP), Coalinga, California.  She [proper pronoun]  filed an abundance of grievances with the assistance of Thomas Clinton.  Those grievances were sent by Clinton via certified mail, and because her previous attempts were "lost" and "destroyed" by prison officials.  The abundance of grievances mostly pertained to her complaints of hostile, discriminatory, and violent conditions of confinement against her sexual orientation as a Transwoman.  Her goal of the grievances was to encourage PVSP/CDCR to create a safe and humane prison environment where she would be given dignity and respect like other inmates, and not be targeted with harassment and violence.  PVSP dismissed her grievances as "frivolous" and chose not to take this opportunity to nurture equality and enforce safety and security within their institution.  She was housed in PVSP gym, and where male inmates would rub their erections against her and sexually harass her.  She was told by prison staff that she should be happy with all the attention, and to think of all the men as a "buffet."  The abundance of grievances began to aggravate the Appeals Coordinator C. Hudson, and Hudson made a deal with Plaintiff that if she would stop exercising her First Amendment they would place her in a "comfortable" cell.  Plaintiff was quickly moved from cell to cell, continued to be housed with masculine male inmates instead of

another transwoman, and which the male inmates saw her as female and pressured her for sex.  She then met another Transwoman that was African American, which she felt she would be safe to be housed with, and could get along with.  Because Plaintiff was white, PVSP staff nurture an environment that is rife with racial tension, and this became a serious inmate conflict.  Nevertheless, after Plaintiff had already been raped twice and reported sexual harassment and abuse from male inmates, the prison felt it might be better to house her with another "girl" for her safety.  The skinheads became hostile because Plaintiff was going to be housed with an African American.  It is the skinheads who run the PVSP yard, and this would prevent the skinheads from continuing to sexually abuse her because by prison politics she would no longer be considered white.  Plaintiff was locked down by a correctional sergeant but the sergeant gave the skinheads yard as a reward for threats of violence against her.  Proving that skinheads will retain their privileges with threats of violence against particularly vulnerable inmates, and Plaintiff would continue to be punished because she is transsexual and not racists.  Being that her cell mate was an African American Transsexual, the shot caller for African Americans offered Plaintiff protection for sex, staff informed her to fend for herself, and so in fear Plaintiff complied with the shot caller's orders.  Prison staff permitted the African American shot caller to enter and exit her cell when the sexual need required.  Soon after this Plaintiff's STD tests returned from the prisoner and she was found to be infected with the HIV virus.  PVSP immediately segregated her and transferred her to the PVSP medical hospital for appropriate treatment and care.

        Correctional Staff began to banter, joke, and check Plaintiff's medical records to see why she [as the only white "Queen" on the yard] was segregated in a medical facility.  They found that she was HIV after reporting a prisoner rape and began to "gossip" with staff and inmates that Plaintiff "has AIDS."  Staff's actions caused Plaintiff's former transsexual inmate to become the victim of verbal and mental "attacks," and the target of never ending harassment.  As the staff disclosed Plaintiff's confidential information, the information moved thru the inmate population, inmates turned onto Plaintiff's former cellmate, and to begin harassing her as "AIDS infected."  This placed Plaintiff's life at risk from inmates, and Plaintiff was quickly transferred to California Medical Facility.

Plaintiff claims that defendants Chastan, Martin, Harper, and Bridges disclosed plaintiff's confidential medical information, specifically that plaintiff is HIV-positive, to other inmates. Plaintiff alleges that defendants Martinez and Florez disclosed plaintiff's confidential medical information to "their . . . inmate snitch Summers" and stated that plaintiff and plaintiff's former cellmate were "AIDS infected 'faggots' and got what they deserve."  Plaintiff claims that defendant Hudson "violated Plaintiff's First Amendment by obstructing her ability to properly exhaust her administrative remedies. . . ."  Finally, plaintiff alleges that defendants Cate and

Yates, as Director of the California Department of Corrections and Rehabilitation and Warden of Pleasant Valley State Prison respectively, implemented deficient policies which "do not protect Plaintiff's medical confidentiality, and lacks safe guards to identify staff that disclose Plaintiff's confidential medical documents to authorized personnel to banter about." Plaintiff seeks injunctive relief and monetary damages.

## II.  DISCUSSION

It appears that plaintiff is asserting that defendants violated her Eighth Amendment rights by disclosing confidential information which created a safety risk.  It also appears that plaintiff is asserting that defendant Hudson violated her First Amendment rights by frustrating her access to the administrative grievance process.  Finally, it appears that plaintiff is asserting that defendants Cate and Yates are liable by virtue of their roles as supervisory personnel.  Plaintiff's claims are defective for the reasons outlined below.

### A.     **Eighth Amendment Safety Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

In this case, plaintiff has not alleged facts which would suggest that knowledge of her HIV-positive status by other inmates posed a risk to her safety.  Nor has she alleged that, if such a risk existed, that defendants knew about it.

**B.     First Amendment Claim**

Plaintiff's claim that defendant Hudson frustrated her access to the administrative grievance process implicates the right to access to the courts because exhaustion is a prerequisite to filing suit.  Prisoners have a constitutional right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right requires prison officials to "assist inmates in the preparation and filing of meaningful

5

legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828.  The right, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.  Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

In this case, plaintiff has not alleged any actual injury.

**C.    Claims Against Supervisory Defendants**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or had actual knowledge of the violations and failed to act to prevent them.  See id.  When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

1    In this case, plaintiff has not alleged the personal involvement of either defendant
2 Cate or defendant Yates.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 15-220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 11-110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

///

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

DATED: December 24, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE